IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **OCTAVIO PAEZ-ORTIZ,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | **CIVIL ACTION NO. 04-0713-CG-D** |
| **v.** ) | |
| ) | **CRIMINAL ACTION NO. 02-00085-CG** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

**REPORT AND RECOMMENDATION**

This matter is before the court on petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 47), supporting memorandum of law (Doc. 48), and supporting affidavit (Doc. 49)[1]; respondent's answer in opposition (Doc. 54) and supporting exhibits (Doc. 55); petitioner's reply (Doc. 56); petitioner's motion for evidentiary hearing (Doc. 59); and motion to expand the record. (Doc. 60).

This action has been referred to the undersigned Magistrate Judge for entry of a report and recommendation as to the appropriate disposition of the issues in the petition. See 28 U.S.C. § 636(b)(1)(B). Upon consideration, the undersigned recommends that petitioner's motion to vacate, set aside or correct sentence (Doc. 47) be **DENIED** The undersigned further recommends that petitioner's motion for evidentiary hearing (Doc. 59) be **DENIED.** Petitioner's motion to expand the record (Doc. 60) is **GRANTED.**

---

[1] The first supporting affidavit was filed on February 17, 2005 and was not signed by defense counsel Robert F. Clark. On February 25, 2005, a signed and notarized duplicate affidavit was filed. (Doc. 55-2).

**I.     Background**

On April 25, 2002, petitioner was indicted in the Southern District of Alabama and charged with conspiracy to possess with intent to distribute more than 10 kilograms of cocaine in violation of 21 U.S.C. § 846, possession with intent to distribute approximately 32 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and traveling in interstate or foreign commerce from Texas to Alabama with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to-wit, the possession with intent to distribute cocaine in violation of 18 U.S.C. § 1952(a)(3). (Doc. 35).[2]

On July 22, 2002, petitioner was tried by a jury and convicted on all counts. (Doc. 26).[3] On November 25, 2002, petitioner was sentenced to 151 months incarceration on counts one and two, to run concurrently, and to 60 months on count three, also to run concurrently. (Doc. 35)

On November 27, 2002, petitioner filed a notice of appeal. (Doc. 36). Petitioner then filed a motion for appointment of counsel, a motion to proceed in forma pauperis on appeal, and a motion for his counsel Robert F. Clark to withdraw. (Docs. 37, 38, 40). On January 14, 2003, petitioner's motions were granted and the Office of the Federal Defender was appointed. (Doc. 41). K. Lyn Hillman, an Assistant Federal Defender, appeared on petitioner's behalf. (Doc. 42).

Petitioner appealed the district court's order denying his motion to suppress admission of

---

[2] Initially, petitioner was represented by Federal Defender Carlos A. Williams. (Doc. 3). However, on April 19, 2002, Robert F. Clark appeared on petitioner's behalf. (Docs. 8, 9). Janice Jones, attorney, assisted Clark at the suppression hearing and trial. Edward Blount, attorney, attended petitioner's probation office conference and sentencing hearing instead of Clark. (Doc. 54, Exhibit B).

[3] The trial lasted one day. At approximately 4:00 p.m. the jury retired and then returned the verdict of guilty at 4:35 p.m. (Trial transcript at pages 201-202).

evidence of cocaine found in a hidden compartment in his vehicle on the grounds that it was found during an unconstitutional search. (Doc. 16, order denying motion to suppress; Doc. 21, order on reconsideration affirming prior order; Doc. 45, appeal). Petitioner also appealed his sentence, in particular the district court's decision regarding petitioner's role in the offense and ineligibility for the "safety valve" provision. (Doc. 45).[4] On December 2, 2003, petitioner's conviction and sentences were affirmed by the Eleventh Circuit Court of Appeals. (Doc. 45).

On November 9, 2004, petitioner filed the motion presently before this court seeking an order from the court to vacate, set aside or modify his sentence. (Doc. 47). Petitioner alleges that his trial counsel was ineffective because "counsel failed to advise [him] of the overwhelming evidence against him and erroneously advised him to proceed to trial instead of encouraging him to plead guilty which would have significantly reduced his sentence." (Id.). Petitioner also alleges that he was "sentenced according to facts not found by a jury beyond a reasonable doubt, but by the preponderance of the evidence at the sentencing by the judge, thereby rendering him actually innocent of elements that were not returned by jury verdict." (Id.).

The United States responds that petitioner was advised of the risk of proceeding to trial as opposed to the merits of entering a guilty plea, was advised of the sentence that he might receive, and

---

[4] Under the Sentencing Guidelines, the sentencing court is allowed to sentence a defendant below the statutory mandatory minimum sentence, if, among other conditions, the defendant "has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . ." U.S.S.G. § 5C1.2(a)(5).

has not established prejudice resulting from counsel's alleged failures. The United States also argues that petitioner's sentencing issue need not be addressed because the Eleventh Circuit Court of Appeals has held that Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000) [5] is not applicable to cases on collateral review. (Doc. 54).

## II. Habeas Standard

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Id. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. Addonizio v. United States, 442 U.S. 178, 185 (1979).

## III. Ineffective assistance of counsel.

Petitioner alleges that his trial counsel Robert Clark was ineffective because he "failed to advise petitioner of the overwhelming evidence against him and erroneously advised him to proceed to trial instead of encouraging him to plead guilty" which would have resulted "in a sentence of a mandatory minimum of 120 months." (Docs. 47, 48). Petitioner argues that Clark failed to discuss or communicate "any plea offer or possible plea that would have resulted in a significantly reduced sentence." (Doc. 48). In support of this argument petitioner has submitted an affidavit which states that Clark "never advised me that it would be in my best interest to plead guilty to the charges in exchange

---

[5] In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 490, 120 S.Ct. 2362-63.

for a significantly lesser sentence than I would receive if I were to proceed to trial and be unsuccessful." (Doc. 49). He also states that if he had known of a plea offer which would have reduced his sentence "to of or around 120 months, the mandatory minimum", he would have accepted it. (Id.).

In his reply to the Government's response, petitioner argues that the record does not show what transpired between he and counsel and that an evidentiary hearing should be held. (Doc. 56). He also argues that Clark "was ineffective when he adamantly communicated to petitioner that he was 'God' and that he would win the trial, versus communicating that it would be in petitioner's best interest to accept the plea based upon the overwhelming evidence against him". (Id.).

In petitioner's second affidavit, an attachment to the reply, petitioner states that he attended the probation office conference with Edward Blount, a member of Clark's firm, and that his sentencing guideline exposure was discussed with the AUSA and the Probation Officer. (Doc. 56-2). He states that Blount advised him not to pay attention because they were still going to trial and that Clark later "advised [him] not to be concerned about discussions with the probation officer because [they] should be successful at the motion to suppress hearing." (Id.). Petitioner states that after the motion to suppress was denied, Clark "advised [him] not to plead guilty and that [they were] still going to trial because he would present new evidence at the trial and he still had 'an ace up his sleeve' to present at the trial." (Id.).

Petitioner also states that Clark "also advised that he did not represent defendants who want to plead guilty" and that "he did not represent 'Government snitches' and that if I wanted to cooperate, I had to find myself a new lawyer." (Doc. 56-2). Petitioner states that "[i]t was because of counsel's advice not to accept the proposed sentencing guidelines range discussed at the probation hearing that

[he] proceeded to trial." (Id.) (underlining in original).  Petitioner also states that he was informed by co-counsel Janice Jones before the trial that "there was a great possibility that [he] would lose" but when he told Clark, he "informed [him] that 'I'm God.  And, I'm going to win this trial." (Id.). Petitioner states that "[b]ecause of Mr. Clark's confidence that he would win the trial because of his omnipotence, I never requested Mr. Clark to revisit any plea offer that may have been on the table by the Government." (Id.).

Respondent answers that petitioner can not establish that Clark's recommendation to proceed to trial was unreasonable. (Doc. 54).  Respondent argues that petitioner "clearly believed that the Government had little or no evidence to overcome his claim" that he did not know of the hidden cocaine. (Id.). Respondent further argues that advice which is wrong in hindsight "does not render it unreasonable at the time it was given" and that the advice must be considered from Clark's perspective at the time. (Id.).

Respondent also argues that petitioner has not established any prejudice from Clark's alleged errors.  Specifically, that petitioner "is unable to establish that he would have entered a guilty plea had [Clark] told him that the United States had strong evidence against him" and that petitioner "consistently maintained" his innocence." (Id.).  Respondent references petitioner's affidavit in support of his position of parties regarding sentencing wherein he stated that the vehicle belonged to a friend of a friend and that he knew of the compartment but thought the truck was for transporting money. (Id.; Doc. 34). Respondent also points out that on appeal, in support of his argument for a sentencing error regarding his role, petitioner still maintained that he did not know of the cocaine. (Doc. 54).

Respondent submits defense counsel Clark's affidavit as evidence that petitioner was aware of

the options discussed at the probation office conference but still decided to go to trial. (Doc. 54, Exhibit A; Doc. 55-2). In his affidavit, Clark states that "prior to accepting Mr. Ortiz as a client, [he] advised him that [he] represent clients who wanted to go to trial and that if [petitioner] wanted to plead guilty or cooperate with [the] Government, he should get another attorney." (Id.). Clark states that petitioner "attended a probation office conference where the full scenario was explained to him with regards to sentencing options" and that petitioner "was aware that there was a possibility of a lesser sentence if he pled guilty as opposed to going to trial and being found guilty." (Id.).[6] Clark states that petitioner was "also aware that there was a possibility that he could go to trial and be found not guilty" but that he "never assured or guaranteed that [he] would win his trial." (Id.). Clark states that although he "regularly discourage[s] potential clients from retaining [his] services if they anticipate entering a plea or cooperating with the Government, once [he] represent[s] a client, if the client decides he wants to enter a plea, [he] represent[s] him in that pursuit and have done so many times."(Id.). Clark states that he advises "every defendant of any plea offers made by the Government although I may not recommend accepting it."(Id.). Clark states that petitioner's "position was always that he did not know that there was cocaine hidden in the vehicle's secret compartment and that he was innocent of the charges[,]" and that "he wanted to take this matter to trial and he never asked me to revisit this decision." (Id.).

The United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The right to counsel entails the right to effective assistance of counsel. Strickland v. Washington, 466 U.S.

---

[6] Co-counsel Edward Blount attended the probation office conference instead of Clark. (Doc. 54-2, Exhibit B).

668, 685-86, 104 S.Ct. 2052, 2063 (1984). To establish ineffective assistance of counsel, a petitioner "must show that his attorney's performance was deficient and that the deficiency was prejudicial." Cross v. U.S., 893 F.2d 1287, 1290 (11th Cir. 1990). An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052 (1984). The elements to consider under the Strickland analysis are as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S.Ct. at 2064. Thus, a successful habeas petitioner must demonstrate that his attorney's performance fell below "an objective standard of reasonableness," Id. at 688, 104 S.Ct. at 2064, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. The Eleventh Circuit has opined as follows:

> [The test] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.... We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately. . . . Thus, in order to show that counsel's performance was unreasonable, the petitioner must establish that no competent counsel would have taken the action that his counsel did take.

Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001)(citing White v. Singletary, 972 F.2d

1218, 1220-21 (11th Cir. 1992)).

Moreover, an attorney's performance is strongly presumed to have been reasonable, and must not be examined with the aid of hindsight. Messer v. Kemp, 760 F.2d 1080, 1088-89 (11th Cir.), cert. denied, 474 U.S. 1088, 106 S.Ct. 864 (1986). A stronger presumption exists when the court examines the performance of experienced trial counsel. Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, 122 S.Ct. 2310 (2002). Therefore, a federal court must give "a heavy measure of deference to counsel's judgments." Singleton v. Thigpen, 847 F.2d 668, 670 (11th Cir.), cert. denied, 488 U.S. 1019, 109 S.Ct. 822 (1989) (quoting Strickland, 466 U.S. at 691, 104 S.Ct. at 2066); Bolender v. Singletary, 16 F.3d 1547, 1557 (11th Cir. 1994) ("[J]udicial scrutiny of an attorney's performance is appropriately highly deferential because the craft of trying cases is far from an exact science; in fact, it is replete with uncertainties and obligatory judgment calls."). Also, an ineffective assistance of counsel claim is examined under the "totality of the circumstances." House v. Balkcom, 725 F.2d 608, 615 (11th Cir.), cert. denied, 469 U.S. 870, 105 S.Ct. 218 (1984). Additionally, "[c]onclusory allegations of ineffective assistance are insufficient." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) (quoting United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991)).

Petitioner's burden is heavy as the Eleventh Circuit acknowledged in Rogers v. Zant, 13 F.3d 384 (11th Cir. 1994), wherein the court stated as follows:

> When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the

9

>circumstances, would have done so. This burden, which is petitioners'
>to bear, is and is supposed to be a heavy one.

Id. at 386 (internal quotations and citations omitted); see also Chandler v. United States, 218 F. 3d 1305, 1313 (11th Cir. 2000) quoting Strickland, 466 U.S. 693, 104 S.Ct. at 2067 ("We recognize that '[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.'").

To prevail on his claim of ineffective assistance of counsel, petitioner must establish that it was objectively unreasonable under the circumstances at the time for Clark to advise him to go to trial instead of advising him to seek a plea agreement and that he suffered prejudice as a result. As previously stated, petitioner alleges that he based his decision to go to trial on Clark's advice to him and his family that the Government's case was weak and they would win at trial. (Docs. 48, 56). Petitioner argues that Clark's incorrect analysis of the strength of the Government's case, Clark's policy of not representing defendants who want to cooperate with the Government to obtain a plea deal or "snitch" for the Government, and Clark's arrogance to the point of perceiving himself as a deity, prevented Clark from properly advising petitioner that the evidence against him was overwhelming and that he should negotiate a plea instead of going to trial. (Id.).    For purposes of this report the undersigned will assume that petitioner's allegations regarding the conduct of defense counsel Clark are true.[7] However, the court need not determine whether the actions of Clark fell below an objective standard of reasonableness because the petitioner has failed to establish that there is a reasonable probability that,

---

[7] Clark, by affidavit, denies that he ever assured or guaranteed that petitioner would win his trial. (Doc. 54, Exhibit A; Doc. 55-2).

but for counsel's unprofessional errors, the result of the proceeding would have been different. Duren v. Hopper, 161 F.3d 655, 660 (11th Cir.1998) ("[I]f a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

Petitioner argues that he was prejudiced because, but for Clark's ineffective assistance, the petitioner would have plead guilty and thus have obtained a significantly reduced sentence. However, there is no evidence to support the petitioner's assertion that he would have plead guilty or that he would have received a reduced sentence.

Petitioner refers to the possible plea/reduced sentence discussed at the probation office conference and states that he would have taken the plea but for the bad advice given by Clark. The probation office conference report shows petitioner was informed that with a finding that 32 kilograms of cocaine were involved in the offense, petitioner had a base offense level of 34 which yielded a sentence range of 151 to 188 months. Petitioner had no criminal history, thus his criminal history category was 1. Petitioner was further informed that with timely acceptance of responsibility, his base could be reduced by 2 points to 32 which yielded a range of 121 to 151 months or by 3 points to 31 which yielded a range of 108 to135 months. If the "safety valve" provision applied, his base could be further reduced by 2 points to 29 which yielded a range of 87 to 108 months (which is below the statutory minimum of 120 months). (Doc. 54-2, Exhibit B).

Petitioner was sentenced to 151 months which is the minimum amount available under the Guidelines for his base offense level of 34. At the time of sentencing the Guidelines were mandatory. Thus, in order to have received a lesser sentence petitioner would have either had to receive acceptance of responsibility or the benefit of a downward departure. To receive acceptance of

responsibility, petitioner would have been required to admit "the conduct comprising the offense(s) of conviction". United States Sentencing Commission, Guidelines Manual § 3E1.1, application note 1. Petitioner has not even alleged, much less produced any evidence, that he would have admitted the conduct comprising the offense, but for the advice of counsel, thus he has failed to adequately allege prejudice. In fact, the only evidence in the record on this issue is that petitioner has continued to maintain, at sentencing and on direct appeal, that he was unaware of the cocaine that was found in his vehicle. Thus there is no basis to even assume that petitioner would have been entitled to a reduction based on acceptance of responsibility.

Moreover, as to a downward departure, petitioner has also failed to even allege a basis from which prejudice could be found. Petitioner speculates that perhaps a plea offer would have been made but for counsel's conduct.[8] Presumably, the petitioner is indirectly arguing that he would have been eligible for a downward departure based on cooperation and/or the Government's recommendation.[9] However this is pure speculation. The only evidence in the record regarding cooperation with the Government is that the Government refused to negotiate with the petitioner regarding a reduced sentence as long as the petitioner refused to admit guilt for the charged offenses. (Sentencing Transcript, p. 6) Again the petitioner has never alleged that he would have admitted guilt, but for the advice of Clark. The court will not embellish petitioner's motion to assume a fact that has not even been alleged.

---

[8] There is no evidence that a plea offer was made by the Government.

[9] The petitioner has not alleged any other basis for which he would have been eligible for a downward departure.

Petitioner has only alleged that he would have plead (believing that he would have received a lesser sentence) but for Clark assuring petitioner that he would win at trial. Without acceptance of responsibility or a downward departure, a plea by the petitioner would have resulted (under the Guidelines) in the same sentence that petitioner received. Thus petitioner has not alleged a sufficient basis from which the court could find that the result of the sentence proceeding would have been different. "[T]hat the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Gilreath v. Head, 234 F.3d 547, 551 (11th Cir.2000)

### IV.     Actual innocence

Petitioner argues that he was "sentenced according to facts not found by a jury beyond a reasonable doubt, but by the preponderance of the evidence at the sentencing by the judge, thereby rendering him actually innocent of elements that were not returned by jury verdict." (Doc. 47). Petitioner further argues that the "jury was never instructed that they had to find drug quantity" and that he never admitted to the amounts alleged in the indictment. Therefore, "pursuant to the Drug Abuse Prevention and Control Act of 1970, and Apprendi, [he] is actually innocent of the elements (drug quantity) that exposed him to a life sentence at the sentencing phase of his trial and a sentence of 151 months." (Doc. 48).

Respondent, citing In re Joshua, 224 F. 3d 1281 (11th Cir. 2000), responds that the court need not consider this claim because the Eleventh Circuit Court of Appeals has held that Apprendi is not applicable to cases on collateral review. (Doc. 54).

In Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000) the U.S. Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime

beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 490, 120 S.Ct. 2362-63.   The record clearly contradicts the petitioner's assertion that the court violated the law as set forth in Apprendi.  The record shows that the jury found petitioner guilty on all three counts and then specifically found that the Government proved beyond a reasonable doubt that "[m]ore than 10 kilograms of cocaine [was] involved in the offense." (Doc. 25, verdict forms.)  Therefore to the extent that the court at sentencing relied upon the 10 year mandatory minimum[10], such determination was supported by a finding beyond a reasonable doubt by the jury. Moreover, count one alleged "more than10 kilograms of cocaine" and count two alleged "approximately 32 kilograms of cocaine". Id.  Thus, the district court's determination that more than15 kilograms but less than 50 kilograms of cocaine were involved in the offense[11] was also supported by the jury verdict.[12]  Accordingly, petitioner's argument is without merit.

**V.     Evidentiary hearing**

---

[10] A person who violates subsection (a) of 21 U.S.C. § 841 (possess with intent to distribute five kilograms or more of cocaine) who has no prior felony conviction "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life[.]" 21 U.S.C. § 841(b)(1)(A)(ii). A person who violates 21 U.S.C. § 846 by attempting or conspiring to commit an offense under 21 U.S.C. § 841, "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846.

[11] The court determined petitioner's base offense under the Guidelines to be 34. (Sentencing transcript, p. 12). United States Sentencing Commission, Guidelines Manual § 2D1.1(c)(3) provides for a base offense level of 34 when the offense involved more than 15 kilograms of cocaine but less than 50 kilograms.

[12] To the extent that the petitioner is attempting to make an argument pursuant to United States v. Booker, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Eleventh Circuit has held that Booker is not retroactive to 28 U.S.C. § 2255 cases on collateral review. Varela v. United States, 400 F.3d 864, 868 (11th Cir.2005).

Petitioner argues that because Clark's affidavit states that "'he never assured or guaranteed' that he would win the trial, in direct opposition to petitioner's sworn testimony via his affidavit", an evidentiary hearing is necessary "to test the truth of [Clark's] allegations." (Doc. 59).  Petitioner also argues that because the affidavits submitted by Clark and petitioner "relates[] primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light" an evidentiary hearing is requested. (Id.).  The Government responds that petitioner has not met his burden of establishing that an evidentiary hearing is necessary. (Doc. 54).

"A federal habeas corpus petitioner is entitled to an evidentiary hearing if he alleges facts which, if proven, would entitle him to relief." Futch v. Dugger, 874 F.2d 1483, 1485 (11th Cir. 1989).  However, "a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel." Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982).

The undersigned has reviewed the record and has determined, as detailed supra, that the petitioner has failed to allege facts which would entitle him to relief.  Accordingly, it is the recommendation of the undersigned that petitioner's request for an evidentiary hearing be **DENIED.**

## VI.   Motion to expand the record.

Petitioner moves the court to expand the record to allow the affidavits of his uncle Jose Leon-Gonzalez, mother Graciela Ortiz-Gonzalez who is an attorney in Mexico, and sister Diane Alejandro Paez-Ortiz, wherein they recount their respective conversations with Clark at the time he was retained and before, during, and after trial. (Doc. 60).  Petitioner offers these affidavits as corroborating evidence of Clark's belief that the Government's case was weak and that petitioner would prevail at

trial.  The motion to expand is **GRANTED**.

**VII.**     Conclusion

It is the recommendation of the undersigned Magistrate Judge that petitioner's motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. §2255 be **DENIED**.

The attached sheet contains important information regarding objections to this Report and Recommendation.

**DONE** this the 26th day of August, 2005.

           **s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **Opposing party's response to the objection.**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**KRISTI K. DuBOSE**
**UNITED STATES MAGISTRATE JUDGE**